Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone:  (602) 524-6602
ADA@strojnik.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Gastelum,<br><br>Plaintiff,<br><br>vs.<br><br>Canyon Hospitality LLC and Grand Canyon Education, Inc.,<br>Defendants. | Case No:<br><br>**VERIFIED COMPLAINT**<br><br>**1.  Americans with Disabilities Act Title III**<br><br>**2.  Negligence**<br><br>**JURY TRIAL REQUESTED** |

## INTRODUCTION

1. Plaintiff brings this action pursuant to the Americans with Disabilities Act Titles III and IV and corresponding regulations, 28 CFR Part 36 and Department of Justice Standards for Accessible Design ("ADA").

2. Plaintiff's left leg is amputated below the knee. Plaintiff moves with the aid of a wheelchair or a prosthetic leg. Plaintiff suffers from a disability as this term is defined in 42 U.S.C. 12102 and 28 CFR §36.105 (c)(1)(i) which includes, inter alia, "walking, standing, sitting, reaching, lifting [and] bending" and other activities. A partial missing limb "substantially limit[s] musculoskeletal function" as a matter of law. 28 CFR § 36.105 (d)(2)(iii)(D).

3. Plaintiff is constantly and relentlessly segregated and discriminated against, excluded, denied equal services, or otherwise treated differently than other individuals because

of his disability, and has been denied the opportunity to participate in or benefit from services, facilities and opportunities available people without disabilities.

4.  Plaintiff is being subjected to discrimination on the basis of disability in violation of Subchapter III of the Americans with Disabilities Act or has reasonable ground to believe that that he is about to be subjected to discrimination in violation of 42 U.S.C. §12183.

5.  Plaintiff has actual notice that Defendants have failed to comply with Subchapter III of the ADA, 28 CFR 36 and the 2010 Standards of Accessibility Design (ADAAG) as more fully alleged below.

6.  Plaintiff alleges that he has no obligation to engage in futile gestures as referenced in 42 U.S.C. §12188(A)(1) and 28 C.F.R. Subpart E.

7.  Defendants have discriminated against Plaintiff by the following actions and failures to act –

    a.  Failing to make reasonable modifications in policies, practices, or procedures which are necessary to afford Plaintiff and others similarly situated accessibility to Defendants' place of public accommodation, thus violating 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. §36.302(a); and

    b.  Failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, thus violating 42 U.S.C. §12182(b)(2)(A)(iii); and

    c.  Failing to remove architectural barriers where such removal is readily achievable, thus violating 42 U.S.C. §12182(b)(2)(A)(iii), 28 CFR 36 and the 2010 Standards..

**PARTIES**

8.  Plaintiff is a disabled person and a committed individual to advance the time when places of public accommodations will be compliant with the ADA. Plaintiff resides in Casa Grande, Arizona.

9.  Plaintiff's disability includes the amputation of the left leg below the knee. Plaintiff moves with the use of a wheelchair, walker and/or a prosthesis.

10. Defendants, Canyon Hospitality LLC and Grand Canyon Education, Inc. D/B/A Grand Canyon University Hotel own and/or operate a hotel at 5115 N. 27th Avenue, Phoenix, AZ 85017 which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) which offers public lodging services *See* 28 CFR §36.104 and a listing of public accommodations in 42 U.S.C. §12181(7). Defendants' place of public accommodation is referred to as PPA.

## SUBJECT MATTER JURISDICTION

11. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

12. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C. §12188 and 28 CFR §36.501.

13. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages, see *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017).

14. Venue is proper pursuant to 28 U.S.C. § 1391.

## ARTICLE III STANDING

15. Plaintiff recognizes that at an irreducible constitutional minimum, any plaintiff must show three elements to establish standing. *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 956 (9th Cir. 2011). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); see also *Spokeo v. Robins*, 136 S. Ct. 1540, 1548–49 (2016), as revised (May 24, 2016). In *Spokeo*, the Supreme Court made clear that "concrete" is not "necessarily synonymous with 'tangible'" and indicated a "risk of real harm" could satisfy the concreteness requirement. Id. at 1549.  Second, there must be a causal connection between the injury and the conduct of which a plaintiff complains. *Lujan*, 504 U.S. at 560. The injury must be fairly traceable to the challenged action of the Defendants, and not the result of the independent action of

some third party not before the court. Id.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id.

16. Because of prior orders of the District Court, see e.g., *Gastelum v. Canyon Hospitality*, No. 17-cv-02792-PHX-GMS at Doc. 42 (on appeal) ("Previous Lawsuit") and *Gastelum v. CP Buttes, LLC No*. No. CV-18-00940-PHX-GMS at Doc. 28 (on appeal), requiring Plaintiff to fact plead and prove constitutional standing, Plaintiff offers the following:

   a. Plaintiff is an amputee. Plaintiff uses a wheelchair or a prosthetic leg or both to ambulate. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the lodging facility which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution. *See Advocates for Individuals with Disabilities, LLC v. WSA Props. LLC*, 2010 F. Supp 3rd 1213 at 1219 (D. Ariz. 2016).

   b. Plaintiff intends to return to Defendants' PPA. Plaintiff demonstrates his intent to return to Defendants' noncompliant accommodation at a specific time when the Defendants' noncompliant accommodation becomes fully compliant. In connection with this allegation, Plaintiff offers the following non-exclusive facts and activities that bring Plaintiff to the Phoenix Metropolitan Area and seek lodging here:

      i. Plaintiff resides in Casa Grande which is a city approximately 55-60 miles away from the Phoenix Metropolitan Are; and

      ii. Plaintiff regularly stays at Phoenix hotels; and

      iii. Plaintiff regularly travels to the Phoenix Metropolitan Area for business and pleasure; and

      iv. Plaintiff regularly travels to the Phoenix Metropolitan Area for the following additional non-exclusive reasons:

         a. Attend sporting events; and

         b. Shop; and

         c. Attend karaoke bars; and

         d. Meet with his attorney; and

e.  Enjoy the City's many beautiful venues; and

f.  Test PPA's for ADAAG compliance.

v.  Plaintiff has sufficient funds to pay for lodging charges at ADA compliant PPAs.

c.  As a direct result of Defendants' non-compliance with the ADA related to his disability as alleged elsewhere in this Verified Complaint, Plaintiff is deterred from returning, visiting or staying there. "Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir. 2011)

d.  As a direct result of Defendants' non-compliance with the ADA related to his disability as alleged elsewhere in this Verified Complaint, Plaintiff suffers a loss of opportunity afforded to gully abled individuals. *See Betancourt v. Ingram Park Mall*, 735 F.Supp. 2d 587, 602 (W.D. Tex. 2010)

e.  As a direct result of Defendants' non-compliance with the ADA related to his disability as alleged elsewhere in this Verified Complaint, Plaintiff has been segregated from able bodies population and has therefore suffered a cognizable injury under the ADA[1].

f.  Plaintiff has standing to pursue his claims for equitable nominal damages as alleged elsewhere in this Verified Complaint, *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017).

---

[1] See, e.g., *Helen v. DiDario*, 46 F.3d 325, 333 n. 15 (1995); *see also Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 858 (2003) *overruled on other grounds as recognized by Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1167 n. 4 (10th Cir. 2012) (noting that Congress specifically identified "segregation" as a form of prohibited discrimination); *Mark H. V. Lemahieu*, 513 F.3d 922, 936 (9th Cir. 2008) (recognizing that the ADA prohibits segregation of disabled students in schools); *Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175 (10th Cir. 2003) (segregation of disabled individuals in institutions is prohibited by ADA).

g.  Plaintiff's injury is fairly traceable to Defendants' failure to comply with the ADA because Plaintiff is mobility disabled and Defendants' ADA violations relate to Plaintiff's mobility related disability.

h.  It is likely that Plaintiff's injuries described in this paragraph and elsewhere in this Verified Complaint will be redressed by a favorable decision.

17. Plaintiff reviewed 3rd party and 1st party lodging websites to book an ambulatory and wheelchair accessible room and to stay there. Plaintiff was denied equal opportunity to use and enjoyment of a critical public accommodation through Defendants' acts of discrimination and segregation alleged below.

18. On Friday, June 8, 2018, Plaintiff attempted to book an accessible at the defendant's PPA room directly through Defendants' in house reservations systems but was told that Defendants' PPA had no accessible rooms available at that time.

19. Thereafter, on June 13, 2018, Plaintiff attempted to book an accessible room through Defendants' third party booking agent, www.expedia.com.

20. This time, Plaintiff was able to book an accessible room which means that the in house booking agent who previously advised him that there were no accessible rooms available made a misrepresentation of fact.

**CONTINUING JURISDICTION**

21. ADA violations which form the subject matter of this Verified Complaint change frequently due to regular maintenance, remodels, repairs, and normal wear and tear.

22. Defendants' ADA Violations are of the type that can reasonably be expected to start up again, allowing Defendants to be free to return to the old ways' after the threat of a lawsuit had passed.

23. If one or more ADA violation are cured, Plaintiff alleges that they were cured and timed to anticipate the current lawsuit, and not as a good faith effort to comply with the ADA.

24. To remedy the violations of 28 CFR 36.302(e), Defendants would be required not only to modify all 1st and 3rd party lodging websites but would be required to do so truthfully and accurately.

6

**COUNT ONE**
**Violation of Plaintiff's Civil Rights under Title III of the ADA**

25. Plaintiff realleges all allegations heretofore set forth.

26. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

27. Plaintiff intends to visit Phoenix and spend the night there on October 27, 2018.

28. Plaintiff visited a 3rd party website www.expedia.com.

29. 3rd party website disclosed general availability and description of Defendants' PPA.

30. 3rd party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendants' PPA meets his accessibility needs.

31. 3rd party website failed to disclose the accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendants' PPA and guest rooms meets his accessibility needs.

32. Thereafter, Plaintiff consulted Defendants' 1st party website www.gcuhotel.com to determine the information unavailable from the third-party website.

33. 1st party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendants' PPA meets his accessibility needs.

34. Thereafter, on or about June 8, 2018, Plaintiff called Defendants' PPA to inquire whether it was suitable for Plaintiff's accessibility needs.

35. Plaintiff spoke with Defendants' reservations clerk whose name is, upon information and belief, was "Angelica".

36. Plaintiff booked a non-accessible room for October 27, 2018.

37. Thereafter, on June 14, 2018, Plaintiff again visited Defendant's third party booking agents at www.expedia.com and attempted to book an accessible room for October 27, 2018.

38. Defendant's 3rd party booking agent, www.expedia.com, was able to book an accessible room for Plaintiff and Plaintiff booked it.

39. Plaintiff subsequently visited the hotel to independently verify that it was, at least on the outside, suitable to accommodate his disability.

40. Plaintiff noted that the hotel was not compliant with the ADAAG and was replete with accessibility barriers in the details which include, without limitation, the following areas of non-compliance:

    a.  306.3.1[2]. The sink for the restroom in the rear lobby does not have sufficient knee clearance.

    b.  309.4. The pool shower controls require two hands to operate.

    c.  309.4. The restroom in the rear lobby requires a twisting of the wrist motion and more than 5 pounds of force to open the door.

    d.  309.4. The guest rooms require a twisting of the wrist motion to open the door.

    e.  309.4. The restroom near the lobby requires more than 5 pounds of force to open the door.

    f.  403.3. Multiple accessible routes have a walking surface which has a cross slope steeper than 1:48 inches.

    g.  405.2. At least one curb ramp has a running slope steeper than 1:12 inches.

    h.  405.2. At least one non-curb ramp has a running slope steeper than 1:12 inches.

    i.  406.4. The diagonal curb ramp does not have a top landing with at least 36 inches of clear length.

    j.  406.5. There is a makeshift ramp on one side of the hotel that projects into traffic lanes.

    k.  406.6. There is diagonal curb ramp which does not have a clear space of at least 48 inches outside of traffic lanes.

---

[2] These numbers relate to 2010 Standards of Accessibility Design.

l.  502.3. Multiple access aisles do not adjoin an accessible route.

m.  502.4. At least one access aisle has a cross slope steeper than 1:48 inches.

n.  502.4. Multiple accessible parking spaces have a cross slope steeper than 1:48 inches.

o.  503.3. The passenger loading zone does not have an access aisle.

p.  504.3. Several stairways have an open riser on the bottom step.

q.  505.3. Several stairways do not have continuous handrails between flights.

r.  505.10.2. Several stairways do not have top handrail extension of at least 12 inches.

s.  505.10.3. Several stairways do not have bottom handrail extensions of at least one tread depth; and

t.  Other ADA violations to be discovered through a discovery process.

41. Plaintiff noted that these ADAAG violations were substantially the same accessibility barriers as existed on October 17, 2017. Defendant was aware of ADAAG violations by virtue of the Previous Lawsuit.

42. The removal of accessibility barriers listed above is readily achievable.

43. As a direct and proximate result of ADA Violations, Defendants' failure to remove accessibility barriers prevents Plaintiff from equal access to Defendants' public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

A.  Relief described in 42 U.S.C. §2000a – 3; and

B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

C.  Injunctive relief order to alter Defendants' place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

E.  Equitable nominal damages; and

F.  For costs, expenses and attorney's fees; and

G.  All remedies provided for in 28 C.F.R. 36.501(a) and (b).

## COUNT TWO
### Negligence

44. Plaintiff realleges all allegations heretofore set forth.

45. Defendants had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

46. Defendants breached this duty.

47. Defendants are or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[3].

48. Defendants knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

49. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[4].

50. Defendants' knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

51. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[5].

---

[3] 42 U.S.C. § 12101(a)(2)

[4] 42 U.S.C. §12101(a)(3)

[5] 42 U.S.C. §12101(a)(5)

52. Defendants' knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

53. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[6].

54. Defendants' knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

55. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[7].

56. Defendants' knowing and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

57. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[8].

58. Defendants' knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendants' knowing and intentional damage to Plaintiff.

59. Defendants' breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

60. By violating Plaintiff's civil rights, Defendants engaged in intentional, aggravated and outrageous conduct.

---

[6] 42 U.S.C. §12101(a)(6)

[7] 42 U.S.C. §12101(a)(7)

[8] 42 U.S.C. §12101(a)(8)

61. The ADA has been the law of the land since 1991, but Defendants engaged in a conscious action of a reprehensible character, that is, Defendants denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

62. Defendants either intended to cause injury to Plaintiff or defendants consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

63. Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

      A. For finding of negligence; and

      B. For damages in an amount to be proven at trial; and

      C. For punitive damages to be proven at trial; and

      D. For such other and further relief as the Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 20th day of June 2018.

**STROJNIK, P.C.**

_____
Peter Strojnik, 6464
Attorneys for Plaintiff

**VERIFICATION**

Plaintiff verifies that he has read the forgoing and that the factual allegations stated above are true and correct to the best of his knowledge, information and belief. Plaintiff makes this verification under the penalty of perjury.

/s/ Fernando Gastelum
Authorized Electronically

12